Patrick W. Kelly (CA Bar No. 274588)
pkelly@swlaw.com
SNELL & WILMER L.L.P.
City National 2Cal
350 South Grand Avenue, Suite 3100
Los Angeles, CA 90071
Telephone: (213) 929-2500
Facsimile: (213) 929-2525

Louis DiSanto (PHV application to be filed)
ldisanto@bannerwitcoff.com
J. Pieter van Es (CA Bar No. 250524)
pvanes@bannerwitcoff.com
Eric J. Hamp (PHV application to be filed)
ehamp@bannerwitcoff.com
Alexander J. Bruening (PHV application to be filed)
abruening@bannerwitcoff.com
BANNER & WITCOFF, LTD.
71 South Wacker Drive, Suite 3600
Chicago, IL 60606-7407
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

Attorneys for Plaintiff Airlite Plastics Co.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **AIRLITE PLASTICS CO.,**<br><br>     Plaintiff,<br><br>v.<br><br>**INNORI D/B/A OREALGARD and EXTREMROCK4X4, INC,**<br><br>     Defendants. | **Case No.   2:23-cv-925**<br><br>**COMPLAINT FOR:**<br><br>**(1) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271**<br>**(2) TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114;**<br>**(3) TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125;**<br>**(4) UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125;**<br>**(5) COMMON LAW TRADEMARK INFRINGEMENT;**<br>**(6) COMMON LAW UNFAIR COMPETITION; and** |

COMPLAINT

**(7) UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200.**

**Jury Trial Demanded**

## COMPLAINT

Plaintiff, Airlite Plastics Co. ("Airlite"), for its complaint against Defendants, Innori (doing business as Orealgard) and Extremrock4X4 Inc ("Extremrock"), alleges as follows:

### The Parties

1.      Airlite is a company organized and existing under the laws of the State of Nebraska, with a principal place of business at 6110 Abbott Drive, Omaha, Nebraska 68108.

2.      On information and belief, Innori is a company organized and existing under the laws of California, with an incorporation and principal place of business address of 370 Turnbull Canyon Rd., #100700, City of Industry, California 91745.

3.      On information and belief, "Orealgard" is the name under which Innori performs at least some business activities relevant to this suit. On information and belief, the "Orealgard" business is represented to have a place of business at 371 Turnbull Canyon Rd., City of Industry, California 91745.

4.      On information and belief, Extremrock is a company organized and existing under the laws of California, with an incorporation and principal place of business address of 14317 Don Julian Road, City of Industry, California 91746.

### Jurisdiction and Venue

5.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*., and for trademark infringement, false designation of origin, and unfair competition under the Trademark Act of 1946, 15

2

COMPLAINT

U.S.C. § 1051, *et seq*. ("Lanham Act"), California Business and Professions Code Section 17200 *et seq*., federal common law, and the common law of the state of California. This Court has subject matter jurisdiction over this action pursuant to at least 28 U.S.C. §§ 1331, 1338(a), and 1367, as well as 15 U.S.C. § 1121(a).

<u>*Jurisdiction and Venue – Innori*</u>

6.　　On information and belief, this Court has personal jurisdiction over Innori based upon its contacts with this forum, including at least regularly and intentionally doing business in this District and committing acts giving rise to this lawsuit in this District.

7.　　On information and belief, Innori, *inter alia*, purposefully and intentionally avails itself of the privileges of doing business in the state of California, including in this District.

8.　　On information and belief, Innori imports products in this District through at least the port of Los Angeles and the port of Long Beach, and Innori markets and sells these imported products to customers and/or potential customers that reside in California, including in this District, among other locations.

9.　　On information and belief, Innori manufactures, offers to sell, sells, uses, and/or imports into the United States, including the state of California and this District, paver products that infringe one or more claims of Airlite's asserted patent.

10.　　On information and belief, Innori uses Airlite's trademarks in the United States, including in the state of California and this District, and such use is likely to cause consumer confusion in, *inter alia*, the state of California and this District, as to the origin, sponsorship, and/or affiliation of its paver products, at least by creating the false and misleading impression that its paver products are manufactured by, authorized by, or otherwise associated with Airlite, and this use, including in the state of California and this District, also constitutes false

COMPLAINT

designation of origin and unfair competition.

11. On information and belief, Innori has advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import, its paver products to customers and/or potential customers, including in this District, at least through Orealgard's website https://orealgard.com/, through which local users, including users from California and this District, transact business, form contracts, and/or exchange information with Innori.

12. On information and belief, Innori's tortious acts giving rise to this lawsuit and the resulting harm to Airlite have occurred and are occurring in California, including in this District.

13. On information and belief, Innori's customers and/or potential customers reside in California, including in this District.

14. On information and belief, Innori resides in City of Industry, California.

15. On information and belief, Innori uses at least part of a storage facility in Santa Fe Springs, California 90670, which is in this District, to at least store the infringing paver products for distribution, use, and sale.

16. On information and belief, Innori is infringing Airlite's intellectual property rights in this District through activity performed at, at least, the City of Industry facility and the Santa Fe Springs facility noted above.

17. Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391 and 1400 at least because Innori resides in this District. Venue is also proper in this District pursuant to at least 28 U.S.C. §§ 1391 and 1400 at least because Innori has committed acts of patent infringement, trademark infringement, and/or unfair competition in California, including within this District, and confusion resulting from Innori's infringing activities is likely to occur in at least California, including

COMPLAINT

within this District, and because Innori has regular and established places of

business in this District.

*Jurisdiction and Venue – Extremrock*

18.    On information and belief, this Court has personal jurisdiction over

Extremrock based upon its contacts with this forum, including at least regularly

and intentionally doing business in this District and committing acts giving rise to

this lawsuit in this District.

19.    On information and belief, Extremrock, *inter alia*, purposefully and

intentionally avails itself of the privileges of doing business in the state of

California, including in this District.

20.    On information and belief, Extremrock imports products in this

District through at least the port of Los Angeles and the port of Long Beach, and

Extremrock markets and sells these imported products to customers and/or

potential customers that reside in California, including in this District, among other

locations.

21.    On information and belief, Extremrock manufactures, offers to sell,

sells, uses, and/or imports into the United States, including the state of California

and this District, paver products that infringe one or more claims of Airlite's

asserted patent.

22.    On information and belief, Extremrock's tortious acts giving rise to

this lawsuit and the resulting harm to Airlite have occurred and are occurring in

California, including in this District.

23.    On information and belief, Extremrock's customers and/or potential

customers reside in California, including in this District.

24.    On information and belief, Extremrock resides in City of Industry,

California.

25.    On information and belief, Extremrock uses at least part of a storage

COMPLAINT

facility in Santa Fe Springs, California 90670, which is in in this District, to at least store the infringing paver products for distribution, use, and sale.

26.　　On information and belief, Extremrock is infringing Airlite's intellectual property rights in this District through activity performed at, at least, the City of Industry facility and Santa Fe Springs facility noted above.

27.　　Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391 and 1400 at least because Extremrock resides in this District. Venue is also proper in this District pursuant to at least 28 U.S.C. §§ 1391 and 1400 at least because Extremrock has committed acts of patent infringement in California, including within this District, and because Extremrock has regular and established places of business in this District.

## General Allegations – Introduction

28.　　Airlite is a family-owned business based in Nebraska that has designed, manufactured, and sold high-quality, made-in-the-USA plastic products for more than seventy five years. Airlite employs many skilled employees across the United States, including at a facility in Oxnard, California, which is in this District.

29.　　Airlite started its business in the 1940's making fishing bobbers one-at-a-time on a single machine located in Omaha, Nebraska. Over the decades since then, Airlite has invested heavily in innovation and expanded its offered goods, all while maintaining its commitment to high quality, domestically manufactured products.

30.　　Among its offerings, Airlite develops, manufactures, and sells a variety of construction products. One such item is Airlite's TRUEGRID® permeable pavers, described in more detail below, which have been sold for years as a way to add stabilized ground areas for, *e.g.*, transportation and storage applications. Airlite's TRUEGRID® paver products are made from recycled high

COMPLAINT

density polyethylene. TRUEGRID® permeable paver products provide many practical and environmental benefits such as water absorption and flooding mitigation, heat island reduction, and erosion prevention, among others. Thus, Airlite's TRUEGRID® permeable paver products have provided a high-quality alternative to traditional blacktop or concrete surfaces commonly used for, *e.g.*, automobile parking lots.

31. To provide the high quality needed to meet Airlite's rigorous standards, Airlite manufactures products in the United States at a variety of locations. This practice allows Airlite to control important aspects of the manufacturing process, including the materials used, the procedures performed, and the skill level of the workers involved. Airlite's commitment to in-house, domestic manufacturing in the United States provides substantial benefits in product quality for Airlite's customers and provides valuable contributions to the communities in which Airlite manufactures products. These results, which Airlite has delivered over many decades, drive the growth of Airlite's reputation and goodwill in the marketplace.

32. Airlite invested substantial time, skill, and resources over the years in creating and maintaining a reputation for high quality products, including its sustainable construction products. To protect these investments and the invaluable goodwill built up through years of effort in the marketplace, including in California, Airlite has acquired numerous intellectual property rights.

33. On information and belief, Defendants manufacture, import, offer for sale, promote and/or sell permeable paver products. On information and belief, at least Innori promotes permeable paver products to the same types of consumers as those to whom Airlite markets its permeable paver products, using the same marketing channels that Airlite uses, such as online advertisements. The permeable paver products that Defendants import, market, and/or sell are the same types of

COMPLAINT

permeable paver products Airlite markets and sells. On information and belief, the channels of trade through which at least Innori markets and sells permeable paver products are the same as those used by Airlite.

34.     On information and belief, these similarities, along with the similarity of Defendants' permeable paver products, as compared to Airlite's, and the similarity of the marks used to promote those goods, as compared to Airlite's, is part of intentional efforts by Defendants to knowingly freeride on Airlite's investments, efforts, and hard-earned goodwill.

**Airlite's Patented TRUEGRID® Permeable Pavers**

35.     U.S. Patent 8,734,049 ("the '049 Patent") is titled "One Piece Water Permeable Paver." On May 27, 2014, the '049 Patent was duly and legally issued by the U.S. Patent Office. Airlite is the assignee of the entire right, title, and interest in and to the '049 Patent. A true and correct copy of the '049 Patent is attached as Exhibit A. A true and correct copy of the patent assignment establishing Airlite's ownership of the '049 Patent is attached as Exhibit B.

36.     Airlite manufactures and sells permeable pavers covered by one or more claims of the '049 Patent under the brand name TRUEGRID®. Airlite's patented TRUEGRID® permeable pavers are an alternative to traditional forms of paving, such as concrete and asphalt. Airlite's patented TRUEGRID® permeable pavers are listed and described on its website: https://www.truegridpaver.com. A true and correct copy of a webcapture of the products page from Airlite's TRUEGRID® website (https://www.truegridpaver.com/products/) is attached as Exhibit C.

37.     Airlite's patented TRUEGRID® permeable pavers offer many benefits that conventional concrete or asphalt paving do not. For example, Airlite's patented TRUEGRID® permeable pavers are designed to allow storm water to infiltrate the ground's surface, instead of shedding water off the surface. Airlite's

COMPLAINT

patented TRUEGRID® permeable pavers reduce the amount of runoff by allowing water to pass through surfaces that would otherwise be impervious, which can reduce standing water and flooding. Airlite's patented TRUEGRID® permeable pavers have initial surface infiltration rates that allow storm water to immediately infiltrate the surface and can store runoff from high intensity rainstorms. In many cases, runoff is eliminated and pollutants are remediated. In addition, Airlite's patented TRUEGRID® permeable pavers prevent potholes, puddles, or cracks from forming. They are also modular, fast, and easy to install. As part of its TRUEGRID® product line, Airlite offers a commercial strength version of its patented TRUEGRID® permeable paver, called "PRO PLUS®." An exemplary image of the patented TRUEGRID® PRO PLUS® permeable paver is shown below:

| **Exemplary Image of Airlite's Patented TRUEGRID® PRO PLUS® Permeable Paver** |
|:---:|
|  |

38.     Airlite's patented TRUEGRID® permeable paver products are manufactured in the United States. Airlite's patented TRUEGRID® permeable

COMPLAINT

paver products, their packaging, and Airlite's website are marked as "Made in the USA":

| Exemplary Images of "Made in the USA" Markings on Airlite's Products, Packaging, and Website |
|---|
|   |
|  |

39.     Airlite also marks its TRUEGRID® permeable pavers and their associated packaging as patented products. Airlite's patented TRUEGRID® PRO PLUS® permeable paver and its packaging are marked with U.S. Patent No. 8,734,049, as shown below:

COMPLAINT

| **Exemplary Images of Patent Markings on Airlite's Patented TRUEGRID® PRO PLUS® Permeable Paver and Related Packaging** |
|---|
|  |
|  |

## Airlite's Trademark Rights

40.    Airlite has also used the inherently distinctive trademark TRUEGRID® throughout the United States and the State of California in connection with its paver products. In view of the extensive and continuous use of TRUEGRID® by Airlite and its predecessors, consumers have come to associate TRUEGRID® as a source identifier of Airlite's TRUEGRID business and the TRUEGRID products, and Airlite owns trademark rights in this mark.

41.    For example, Airlite owns all right, title, and interest in federal

COMPLAINT

Trademark Registration No. 4,217,252 ("the '252 Registration") for use of TRUEGRID® with paver tiles. A true and correct copy of this trademark registration is attached as Exhibit D. A true and correct copy of the trademark assignment establishing Airlite's ownership of the of '252 Registration is attached as Exhibit E. Additionally, the '252 Registration is incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, and thus serves as conclusive evidence of the validity of the TRUEGRID® trademark, Airlite's ownership of the trademark, and of Airlite's exclusive right to use the TRUEGRID® mark in commerce pursuant to 15 U.S.C. § 1115(b).

42.    Airlite also owns common law rights in the TRUEGRID trademark based on use of TRUEGRID by Airlite and its predecessors in commerce in connection with Airlite's paver goods throughout the United States and including the state of California. Airlite's rights in the TRUEGRID trademark including the '252 Registration, and its common law rights, are collectively referred to as "Airlite's TRUEGRID Trademark."

43.    As a result of, *inter alia*, the exclusive, continuous and substantial use of Airlite's TRUEGRID Trademark by Airlite and its predecessors, the exclusive, continuous, and substantial advertisement and promotion of products bearing Airlite's TRUEGRID Trademark by Airlite and its predecessors, and the publicity and attention that has been paid to Airlite's TRUEGRID Trademark, the trademark has acquired valuable goodwill and secondary meaning in the marketplace, as consumers have come to uniquely associate Airlite's TRUEGRID Trademark as a source identifier of Airlite's TRUEGRID business and the TRUEGRID products.

44.    Airlite has also used the inherently distinctive trademark PRO PLUS® throughout the United States and the state of California in connection with its permeable paver products. In view of the extensive and continuous use of PRO PLUS® by Airlite and its predecessors, consumers have come to associate PRO

COMPLAINT

PLUS® as a source identifier of Airlite's PRO PLUS® products, and Airlite owns trademark rights in this mark.

45.     For example, Airlite owns all right, title, and interest in federal Trademark Registration No. 5,686,002 ("the '002 Registration") for use of PRO PLUS® with water permeable paver tiles, namely, permeable plastic pavers for interlocking use in commercial permeable paving system for outdoor use capable of handling foot or automobile traffic. A true and correct copy of this trademark registration is attached as Exhibit F. A true and correct copy of the trademark assignment establishing Airlite's ownership of the of '002 Registration is attached as Exhibit E. Additionally, under Section 15 of the Lanham Act, 15 U.S.C. § 1065, the '002 Registration is serves as prima facie of the validity of the PRO PLUS® trademark, Airlite's ownership of the trademark, and of Airlite's exclusive right to use the PRO PLUS® mark in commerce pursuant to 15 U.S.C. § 1115(a).

46.     Airlite also owns common law rights in the PRO PLUS trademark based on use of PRO PLUS in commerce by Airlite and its predecessors in connection with Airlite's paver goods throughout the United States and including the state of California. Airlite's rights in the PRO PLUS trademark including the '002 Registration, and its common law rights, are collectively referred to as "Airlite's PRO PLUS Trademark."

47.     As a result of, *inter alia*, the exclusive, continuous, and substantial use of Airlite's PRO PLUS Trademark by Airlite and its predecessors, the exclusive, continuous, and substantial advertisement and promotion of products bearing Airlite's PRO PLUS Trademark by Airlite and its predecessors, and the publicity and attention that has been paid to Airlite's PRO PLUS Trademark, the trademark has acquired valuable goodwill and secondary meaning in the marketplace, as consumers have come to uniquely associate Airlite's PRO PLUS Trademark as a source identifier of Airlite's PRO PLUS® products.

COMPLAINT

48.    Airlite indicates that Airlite's TRUEGRID Trademark and Airlite's PRO PLUS Trademark are federally registered in promotional materials for Airlite's permeable paver products, as illustrated below.

**Exemplary Trademark Registration Markings on Airlite's Website**



49.    Airlite's rights in Airlite's TRUEGRID Trademark and Airlite's PRO PLUS Trademark, including the '252 Registration, the '002 Registration, and all common law rights, are collectively referred to herein as "Airlite's Trademarks."

**Defendants' Unlawful Activities**

50.    On information and belief, and as explained in more detail below, Defendants work together (and are alter egos of each other in such work) to import, market, and sell permeable pavers, which they call the Orealgard Pavers.

51.    On information and belief, Defendants' Orealgard Pavers are produced in China and imported into the United States. On information and belief, and as explained in more detail below, at least Extremrock imports Defendants'

14

COMPLAINT

1    Orealgard Pavers.

2        52.        On information and belief, and as explained in more detail below, at

3    least Innori markets and sells the Orealgard Pavers in the United States, doing

4    business as "Orealgard," through at least the website www.orealgard.com, which is

5    operated and controlled by Innori.

6        53.        Orealgard's permeable paver products are alleged by Innori to be

7    designed as an alternative pavement solution to concrete, asphalt, and other

8    traditional paving methods.

9        54.        Orealgard's permeable paver (right) is shown side-by-side with

10    Airlite's patented TRUEGRID® PRO PLUS® Permeable Paver (left) below:

| Side-by-Side Images of Airlite's Patented TRUEGRID® PRO PLUS® Permeable Paver and Orealgard's Infringing Paver | |
| --- | --- |
|  |  |
| **Airlite's Patented TRUEGRID® PRO PLUS® Permeable Paver** | **Orealgard's Infringing Paver** |

23        55.        As explained in more detail below in Count I, Defendants' making,

24    using, selling, offering to sell, and/or importing its Orealgard Paver products (the

25    "Infringing Products") directly and/or indirectly infringes one or more claims of

26    the '049 Patent, including at least claim 1 of the '049 Patent.

COMPLAINT

56.     Defendants' infringement of the '049 Patent has been, and continues to be, intentional, willful, and malicious, and part of a bad-faith campaign to freeride off Airlite's investments and goodwill by violating Airlite's intellectual property rights and appropriating Airlite's efforts as their own.

57.     On information and belief, Defendants' bad faith is evidenced at least by, as shown by representative facts noted below, Defendants' intentional copying and use of Airlite's patented inventions, Innori's intentional copying and use of Airlite's TRUEGRID and PRO PLUS Trademarks, Innori's intentional misrepresentation of Airlite's patented products as Defendants' Infringing Products, and the intentional attempts by at least Innori to obscure the source of the infringements to avoid consequences of the many intentional violations of Airlite's intellectual property rights and freeriding off Airlite's extensive efforts, investments, and goodwill.

58.     The Infringing Products have many details similar to Airlite's patented TRUEGRID® PRO PLUS® permeable pavers, even beyond the readily apparent overall design similarity. For example, like Airlite's patented TRUEGRID® PRO PLUS® pavers, the Infringing Product includes 36 "cells" in a 6×6 grid and broken up into quadrants of 9 "cells" organized in 3×3 grids. As another example, the mechanisms used to interlock individual sections of Airlite' and Defendants' permeable pavers are nearly identical.

59.     Such similarities exhibit an intentional effort by Defendants to copy Airlite's patented design.

60.     And, as explained below, Innori has even marketed its Infringing Products with a photo depicting a parking lot made with Airlite's TRUEGRID® permeable pavers and falsely indicated that the parking lot was made with Defendants' Infringing Products, thereby confirming that the Infringing Products were knowingly designed to be, especially adapted to be, and fully intended to be

COMPLAINT

used in the exact same manner as Airlite's patented inventions and have no other commercial use.

61.    These many similarities and circumstances confirm Defendants' intentional knowledge of Airlite's product's designs and the claimed inventions of the '049 Patent. These facts also show Defendants' intent to copy Airlite's patented design and avoid their own costly research, development, and design expenses.

62.    Innori also intentionally infringes Airlite's trademark rights by using Airlite's TRUEGRID Trademark and Airlite's PRO PLUS Trademark, and/or colorable imitations thereof, in connection with at least Innori's advertising, promoting, offering for sale, selling, and distributing of the Infringing Products.

63.    As one example, Innori uses search engine ads to advertise the Infringing Products online.

64.    Innori chooses, controls and/or approves the content of their search engine advertisements for the Infringing Products.

65.    Without the authorization of Airlite, Innori uses Airlite's TRUEGRID Trademark and Airlite's PRO PLUS Trademark in connection with Innori's online advertisements and solicitations of sales of the Infringing Products. For example, online searches using terms from Airlite's Trademarks result in Innori advertisements (promoted under its d/b/a "Orealgard") for Infringing Products that prominently, and falsely, state they are for "Truegrid" pavers or "Truegrid Pro Plus" pavers. Below is an example webcapture of an online search result where a user typed "truegrid pro" in the search bar and the resulting "Ad" for http://www.orealgard.com includes Innori's use of Airlite's TRUEGRID Trademark and Airlite's PRO PLUS Trademark in the advertisement (provided in full in Exhibit G) for the Infringing Products.

COMPLAINT



**Image of Innori's Use of Airlite's TRUEGRID Trademark and Airlite's PRO PLUS Trademark (Exhibit G) (Annotations Added)**

66.     This Innori advertisement (under Innori's d/b/a name "Orealgard," which is shown in the URL, http://www.orealgard.com) prominently, and falsely, associates Orealgard with "Truegrid Pro Plus" permeable pavers.

67.     In this advertisement, Innori is using Airlite's exact "TRUEGRID" trademark and exact "PRO PLUS" trademark.

68.     Innori's goods described in the Innori advertisement, permeable pavers, are the same goods as Airlite's goods sold under the Airlite's TRUEGRID Trademark and Airlite's PRO PLUS Trademark—*i.e.* permeable pavers.

COMPLAINT

69.     The above example Innori advertisement also shows an Airlite advertisement for Airlite's truegridpaver.com website, and shows that Airlite and Innori both simultaneously use search engine ads and the internet as a marketing channel.

70.     Innori's use of "Truegrid" and "Truegrid Pro Plus" is an intentional, bad faith attempt to capture the initial and subsequent interest of potential buyers and confuse them with respect to the offered products. This use of Airlite's TRUEGRID Trademark and Airlite's PRO PLUS Trademark is likely to result in confusion leading up to and during the sale of the Infringing Products, as well as post-sale confusion following the purchase of what was believed to be a genuine TRUEGRID® and/or TRUEGRID® PRO PLUS® product offered by Airlite, or a permeable paver product approved by or affiliated with Airlite's TRUEGRID business and/or the patented TRUEGRID® products.

71.     Without authorization, Innori has used Airlite's TRUEGRID Trademark and Airlite's PRO PLUS Trademark by displaying the exact marks in the text of headings of sponsored links on internet search engines to advertise their Infringing Products, and to intentionally confuse consumers and potential consumers.

72.     TRUEGRID® products and related packaging include markings showing that TRUEGRID® is a federally registered trademark, such that, on information and belief, Innori has prior knowledge of at least Airlite's incontestable federal trademark rights in Airlite's TRUEGRID Trademark. Airlite's website, www.truegridpaver.com, also indicates that TRUEGRID® and PRO PLUS® are federally registered trademarks, such that, on information and belief, Innori has prior knowledge of at least Airlite's federal trademark rights in Airlite's TRUEGRID Trademark and Airlite's PRO PLUS Trademark through at least Airlite's website.

COMPLAINT

73.     As another example of Defendants' bad faith, Innori has falsely claimed that a parking lot made with Airlite's patented TRUEGRID® permeable pavers was a project that was completed using the Infringing Products. For example, Innori has advertised the following image as a "Recent Project" on the Orealgard website, as shown in Exhibit H (https://web.archive.org/web/20220629092620/https://orealgard.com/):

**Screenshot From Orealgard's Website (Exhibit H) of a Purported Orealgard "Recent Project" That Actually Showed Airlite's Patented TRUEGRID® Permeable Pavers**



**Screenshot Showing Example Image Use in Orealgard Paver "Project" Depiction**



**Expanded Image**

74.     In reality, this is a photograph from an article about a project that used Airlite's TRUEGRID® permeable pavers at Five Points Bakery in Buffalo, New York, as illustrated below and in Exhibit I (webcapture of https://innovativebuildingmaterials.com/design-inspiration/parking-on-grass/ (discussing use of TRUEGRID® permeable pavers and using above photo)).

20

COMPLAINT

| Image From Publicly Available Article About TRUEGRID Permeable Pavers (Exhibit I) |
| --- |





75.     Innori's use of a photograph showing a parking lot made with Airlite's products, while wrongly indicating to consumers that the photograph shows use of Defendants' Infringing Products, was likely to cause confusion, mistake, or deception as to the affiliation, connection, or association between Innori and Airlite, or as to the origin, sponsorship, and/or affiliation of Innori's Infringing Products, at least by creating the false and misleading impression that its Infringing Products are manufactured by, authorized by, or otherwise associated

COMPLAINT

with Airlite's TRUEGRID business and/or the TRUEGRID® products. Innori's use of the photograph, while indicating to consumers that the photograph showed use of Defendants' Infringing Products—a literally false statement in commercial and promotional online materials—also constituted false commercial advertising and/or promotion that misrepresented the nature, characteristics, and qualities of the Infringing Products and/or Innori's commercial activities in a manner that was likely to deceive the consuming public, to the detriment of Airlite.

76.     Innori's use and appropriation of a photograph showing an installation of Airlite's TRUEGRID® products demonstrates that Innori intentionally reviews internet content related to Airlite's TRUEGRID® permeable paver products. Thus, on information and belief, Innori has also viewed indications (*e.g.* on the main landing page and subpages of the https://www.truegridpaver.com/ website) that the TRUEGRID® products are patented, including by the '049 Patent, and that the TRUEGRID® trademark is federally registered, and that the PRO PLUS® trademark is federally registered, further confirming willful infringement of these rights.

77.     Given at least the similarity of the Infringing Products to Airlite's TRUEGRID® products, Innori's use of Airlite's TRUEGRID Trademark, Innori's use of Airlite's PRO PLUS Trademark, Innori's passing off of an installation made with  Airlite's TRUEGRID® products as being made with the Infringing Products, and Airlite's marking of the '049 Patent on Airlite's TRUEGRID® products, Innori has long-standing notice and knowledge of Airlite's intellectual property rights, including the '049 Patent. Thus, on information and belief, the resemblance of the Infringing Products to the Airlite TRUEGRID® products in both design and intended use is knowing and intentional by Defendants.

### **Innori's Attempts to Hide Its Identity With Sham Addresses**

78.     As another example of Defendants' bad faith commercial practices, at

COMPLAINT

1  least Innori has taken steps to intentionally conceal its corporate identity in an

2  apparent effort to avoid consequences for its willful violations of Airlite's rights.

3  Innori does not appear to be identified in any Orealgard website, social media, and

4  product literature.

5      79.      Orealgard lists its address as 371 Turnbull Canyon Road in City of

6  Industry, California, on its website, social media, and product literature. For

7  example, an excerpt from Orealgard's Installation Guide, pictured below, shows

8  use of this address in connection with the Infringing Products.



**Excerpt of "Installation Guide" from Orealgard Website**

24      80.      But 371 Turnbull Canyon Road is not a valid address. There is no

25  building, unit, box, or address for 371 Turnbull Canyon Road in the City of

26  Industry, California.

COMPLAINT

81.    Innori and the "Orealgard" business appear to have taken similar measures abroad to hide any relevant addresses. Orealgard's address listed on its previous versions of website was "No. 25638, No. 1, Hengda Internet Business Virtual Industrial Park, No. 51, Zhongshan Road, Jianyang District, Nanping City" in China. On information and belief, the building located at this address is not named "Hengda Internet Business Virtual Industrial Park." In addition, on information and belief, the tenants of this address do not appear to include Defendants, any entity related to Defendants, or any business related to the Infringing Products.

### The True Entities Behind "Orealgard" are Innori and Extremrock

82.    On information and belief, Innori and Extremrock both conduct business activities in connection with the operation of "Orealgard" and are responsible for Orealgard's infringing acts. In addition, on information and belief, Innori and Extremrock are alter egos of each other when conducting business activities in connection with the operation of "Orealgard" and Orealgard's infringing acts.

83.    For example, on information and belief, at least Innori operates the website https://orealgard.com/.

84.    Innori is the owner of U.S. Trademark Registration No. 6,051,612.

85.    Below is a comparison of the mark of U.S. Trademark Registration No. 6,051,612 and the Orealgard mark used on Orealgard's website at https://orealgard.com/. The similarity of these marks shows that at least Innori is involved in the design and use of the Orealgard mark provided on their website, thus showing control over the content of Orealgard's website that solicits and completes orders of the Infringing Products.

COMPLAINT

| Innori's Trademark Registration No. 6,051,612 | Orealgard logo from https://orealgard.com/ |
|---|---|
| **OREaL** auto. | **OREaL** gard |

86.      The owner information publicly listed for U.S. Trademark Registration No. 6,051,612 provides an address for Innori of #100700 14317 Don Julian Road, City of Industry, CA 91746. This address uses the "#100700" from the address of Innori provided in California Secretary of State filings, but otherwise matches the distinct address of 14317 Don Julian Road, City of Industry, CA 91746 that is provided in California Secretary of State filings for Extremrock.

87.      As another example, on information and belief, Extremrock imports Infringing Products into the United States.

88.      Import records for Extremrock include a 2022 shipment received at the port Los Angeles, located in this District, that contained, among other goods, "PERMEABLE PAVERS."

89.      Import records for Extremrock include multiple shipments where the consignee address is 370 Turnbull Canyon Rd, Suite B City of Industry, CA 91745, which is substantially identical to the corporate address provided in Innori's corporate filings with the California Secretary of State.

90.      Import records for Extremrock include multiple shipments where the consignee address is 15060 Shoemaker Ave Santa Fe Springs, CA 90670.

91.      On information and belief, 15060 Shoemaker Ave Santa Fe Springs, CA 90670 is the address of a shared storage facility where Infringing Products are stored and, when purchased, distributed to buyers.

92.      Import records for Innori include a shipment where the consignee address is 14317 E Don Julian Road, City of Industry, California 91746, which is

COMPLAINT

substantially identical to the corporate address of Extremrock provided in Extremrock's corporate filings with California Secretary of State.

93.     On information and belief, an officer of Innori is Sheng Wu (who is also the agent for service of process). On information and belief, Sheng Wu is the Chief Executive Officer and Chief Financial Officer of Innori. Sheng Wu, as President of Innori, executed the trademark application for OREALAUTO filed in the U.S. Trademark Office.

94.     On information and belief, the sole officer of Extremrock is Sheng Wu (who is also the agent for service of process). On information and belief, Sheng Wu is the Chief Executive Officer, Chief Financial Officer, and Secretary of Extremrock.

95.     On information and belief, based on at least the above facts, including the apparent overlap and commingling activities of the Innori and Extremrock businesses (which are both operated by Sheng Wu), both Innori and Extremrock are involved in the advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing of Infringing Products to customers and/or potential customers, and both corporations operate as "Orealgard" to perform one or more infringing activities, such as the importation of Infringing Products by at least Extremrock or the sale of Infringing Products by at least Innori, which independently result in liability for both entities.

96.     On information and belief, Innori and Extremrock are alter egos of each other, as demonstrated by, for example, their common operation by Sheng Wu, use of Extremrock's address in Innori trademark filings, importation of products by Extremrock for sale on a website operated by at least Innori, and use of each corporation's address for the others business activities.

97.     On information and belief, including based on at least the above facts, Innori and Extremrock have a unity of interest and ownership such that they do not

COMPLAINT

operate as separate entities, operate as a mere shell of each other, work to conceal the identity of at least Innori with respect to their infringing activities, and operate in bad faith to infringe Airlite's rights while attempting to hide the true identity and location of at least Innori.

**Count I: Patent Infringement Under 35 U.S.C. § 271 By Both Defendants**

98.     Airlite realleges and incorporates the allegations set forth in paragraphs 1 through 97 as though fully set forth herein.

99.     Defendants have infringed, directly and/or indirectly, and continue to infringe, directly and/or indirectly, literally or under the doctrine of equivalents, one or more claims of the '049 Patent in violation of one or more subsections of 35 U.S.C. § 271 by making, using, offering to sell, selling, and/or importing into the United States the Infringing Products, including to customers in the state of California and in this District, for use in the state of California and in this District.

100.     The Infringing Products include, either literally or under the doctrine of equivalents, each and every element of one or more claims of the '049 Patent, including at least claim 1. The claim chart attached as Exhibit J shows how the Infringing Product contains each and every element of claim 1 of the '049 Patent.

101.     Defendants' acts of infringement have been without express or implied license by Airlite, are in violation of Airlite's rights, and will continue to violate Airlite's rights unless enjoined by this Court.

102.     Defendants' infringement of the '049 Patent has been, and continues to be, intentional, willful, and malicious, which is evidenced, on information and belief, at least by Defendants' knowledge of Airlite's '049 Patent, Defendants' copying of Airlite's patented products, Innori's intentional use of Airlite's TRUEGRID and PRO PLUS Trademarks, Innori's false claim that an installation of Airlite's patented products was made with Defendants' Infringing Products, and the attempts by at least Innori to avoid legal ramifications for its violations of

COMPLAINT

1  Airlite intellectual property by obscuring its identity.

2      103.    This is an exceptional case at least in view of Defendants' unlawful

3  activities, including Defendants' intentional, willful, and malicious patent

4  infringement, and other illegal acts (including Innori's intentional use of Airlite's

5  TRUEGRID and PRO PLUS Trademarks).

6      104.    Airlite has been, is being, and will continue to be injured and has

7  suffered, is suffering, and will continue to suffer injury and damages for which it is

8  entitled to relief under at least 35 U.S.C. §§ 281, 284, and 285.

9      105.    Defendants have caused, are causing, and will continue to cause

10  irreparable harm to Airlite for which there is no adequate remedy at law and for

11  which Airlite is entitled to injunctive relief under at least 35 U.S.C. § 283.

12      **Count II: Trademark Infringement Under 15 U.S.C. § 1114 By Innori**

13      106.    Airlite re-alleges each and every allegation set forth in paragraphs 1

14  through 105 above, inclusive, and incorporates them by reference herein.

15      107.    Based on the activities described above, including, for example,

16  Innori's use of Airlite's federally registered TRUEGRID® trademark and Airlite's

17  federally registered PRO PLUS® trademark to promote and sell the Infringing

18  Products, Innori violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

19      108.    Airlite's TRUEGRID Trademark is entitled to protection under

20  federal law. In particular, the Airlite TRUEGRID Trademark rights include

21  federally registered U.S. trademark number 4,217,252 for TRUEGRID, which is

22  now incontestable and thus provides conclusive evidence of the validity of the

23  TRUEGRID trademark and of Airlite's exclusive right to use the TRUEGRID

24  mark in commerce. The TRUEGRID trademark covered by the '252 Registration

25  is inherently distinctive. Airlite and its predecessors have extensively and

26  continuously promoted and used the TRUEGRID trademark covered by the '252

27  Registration for years in the United States. Through that extensive and continuous

28

COMPLAINT

use, the TRUEGRID Trademark covered by the '252 Registration has become a well-known indicator of the origin and quality of Airlite's TRUEGRID business and the TRUEGRID® permeable paver products. Airlite's TRUEGRID Trademark, including the TRUEGRID trademark covered by the '252 Registration, has also acquired secondary meaning in the marketplace. Moreover, Airlite's TRUEGRID Trademark acquired this secondary meaning before Innori commenced its unlawful use of Airlite's TRUEGRID Trademark in connection with the Infringing Products.

109.     Airlite's PRO PLUS Trademark is entitled to protection under federal law. In particular, the Airlite PRO PLUS Trademark rights include federally registered U.S. trademark number 5,686,002 for PRO PLUS, which provides prima facie evidence of the validity of the PRO PLUS trademark and of Airlite's exclusive right to use the PRO PLUS mark in commerce. The PRO PLUS Trademark covered by the '002 Registration is inherently distinctive. Airlite and its predecessors have extensively and continuously promoted and used Airlite's PRO PLUS Trademark covered by the '002 Registration for years in the United States. Through that extensive and continuous use, Airlite's PRO PLUS Trademark covered by the '002 Registration, has become a well-known indicator of the origin and quality of Airlite's TRUEGRID® PRO PLUS® paver products. Airlite's PRO PLUS Trademark covered by the '002 Registration has also acquired secondary meaning in the marketplace. Moreover, Airlite's PRO PLUS Trademark acquired this secondary meaning before Innori commenced its unlawful use of Airlite's PRO PLUS Trademark in connection with the Infringing Products.

110.     Based on the activities described above, including, for example, Innori's use of Airlite's federally registered TRUEGRID® trademark protected by the '252 Registration and Airlite's federally registered PRO PLUS® trademark protected by the '002 Registration, and/or colorable imitations thereof, in

COMPLAINT

connection with the Infringing Products, Innori has infringed Airlite's federally registered trademarks under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). Innori's use of Airlite's federally registered trademarks and/or colorable imitations thereof is likely to cause confusion, or to cause mistake, or to deceive.

111.    Innori's use of Airlite's federally registered trademarks and/or colorable imitations thereof, has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Airlite for which Airlite has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Airlite's federally registered trademarks, Airlite's products, and Airlite.

112.    On information and belief, Innori's use of Airlite's federally registered trademarks and/or colorable imitations thereof, has been intentional, willful, and malicious. Innori's bad faith is evidenced at least by the example facts described above, including Innori's unlawful use of Airlite's federally registered and common law trademarks in an effort to sell the Infringing Products (including but not limited by attempting to capture a potential buyer's initial interest), Innori's infringements of Airlite's other rights and Innori's efforts to confuse customers, such as Innori's  false claim that an installation of Airlite's patented TRUEGRID products was made with Defendants' Infringing Products, Innori's continuing disregard for Airlite's rights, and the attempts by at least Innori to avoid legal ramifications for its violations of Airlite intellectual property by obscuring its identity.

113.    Airlite is entitled to injunctive relief under at least 15 U.S.C. § 1116 and an award of its reasonable costs and attorney's fees under 15 U.S.C. § 1117.

COMPLAINT

## Count III: Trademark Infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) By Innori

114.    Airlite realleges and incorporates the allegations set forth in paragraphs 1 through 113 as though fully set forth herein.

115.    Airlite's Trademarks are valid and are entitled to protection under federal law. Airlite's Trademarks are inherently distinctive. Airlite and its predecessors have extensively and continuously promoted and used Airlite's Trademarks for years in the United States. Through that extensive and continuous use, Airlite's Trademarks have become a well-known indicator of the origin and quality of Airlite's products. Airlite's Trademarks have also acquired secondary meaning in the marketplace. Moreover, Airlite's Trademarks acquired this secondary meaning before Innori commenced its unlawful use of Airlite's Trademarks in connection with the Infringing Products.

116.    Based on the activities described above, including, for example, Innori's s use of Airlite's Trademarks and/or colorable imitations thereof, Innori violates § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Innori's use of Airlite's Trademarks and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Innori with Airlite and as to the origin, sponsorship, and/or approval of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Airlite.

117.    Innori's use of Airlite's Trademarks and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Airlite for which Airlite has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Airlite's Trademarks, Airlite's products, and Airlite.

COMPLAINT

118.     On information and belief, Innori's use of Airlite's Trademarks and/or colorable imitations thereof has been intentional, willful, and malicious. Innori's bad faith is evidenced at least by the example facts described above, including Innori's unlawful use of Airlite's federally registered and common law trademarks in an effort to sell the Infringing Products (including but not limited by attempting to capture a potential buyer's initial interest), Innori's infringements of Airlite's other rights and Innori's efforts to confuse customers, such as Innori's false claims than an installation of Airlite's patented TRUEGRID products was made with Defendants' Infringing Products, Innori's continuing disregard for Airlite's rights, and the attempts by at least Innori to avoid legal ramifications for its violations of Airlite intellectual property by obscuring its identity.

119.     Airlite is entitled to injunctive relief under at least 15 U.S.C. § 1116.

## Count IV: Unfair Competition and False Designation of Origin and False Advertising Under 15 U.S.C. § 1125(a) By Innori

120.     Airlite realleges and incorporates the allegations set forth in paragraphs 1 through 119 as though fully set forth herein.

121.     Airlite's Trademarks are valid and are entitled to protection under federal law. Airlite's Trademarks are inherently distinctive. Airlite and its predecessors have extensively and continuously promoted and used Airlite's Trademarks for years in the United States. Through that extensive and continuous use, Airlite's Trademarks have become a well-known indicator of the origin and quality of Airlite's products. Airlite's Trademarks have also acquired secondary meaning in the marketplace. Moreover, Airlite's Trademarks acquired this secondary meaning before Innori commenced its unlawful use of Airlite's Trademarks in connection with the Infringing Products.

122.     Based on the activities described above, including, for example,

COMPLAINT

Innori's use of Airlite's Trademarks and/or colorable imitations thereof, and
Innori's false claims that an installation of Airlite's patented TRUEGRID products
was made with Defendants' Infringing Products, Innori violates § 43(a) of the
Lanham Act, 15 U.S.C. § 1125(a) and such actions constitute unfair competition
and false designation of origin and false advertising, at least because Innori has
obtained an unfair advantage as compared to Airlite through Innori's use of
Airlite's Trademarks, because such use is likely to cause confusion, or to cause
mistake, or to deceive as to the affiliation, connection, or association between
Innori and Airlite, because such use of Airlite's Trademarks is likely to cause
consumer confusion as to the origin, sponsorship, and/or affiliation of Innori's
Infringing Products, at least by creating the false and misleading impression that its
Infringing Products are manufactured by, authorized by, or otherwise associated
with Airlite, and because Innori's use of a photograph that showed an installation
of Airlite's patented TRUEGRID products while falsely and deceptively stating it
showed a "Recent Project" using Defendants' Infringing Products in Innori's
online commercial and promotional materials for the Infringing Products, a
statement that was literally false and misleading to consumers, constituted false
commercial advertising and/or promotion that misrepresented the nature,
characteristics, and qualities of the Infringing Products and/or Innori's commercial
activities and was likely to deceive the consuming public in a material manner, to
the detriment of Airlite.

123.    On information and belief, Innori's use of Airlite's Trademarks and/or
colorable imitations thereof has been intentional, willful, and malicious. Innori's
bad faith is evidenced at least by the example facts described above, including
Innori's unlawful use of Airlite's federally registered and common law trademarks
in an effort to sell the Infringing Products (including but not limited by attempting
to capture a potential buyer's initial interest), Innori's infringements of Airlite's

COMPLAINT

other rights and Innori's related efforts to confuse customers, such as Innori's false claims that an installation of Airlite's patented TRUEGRID products was made with Defendants' Infringing Products, Innori's continuing disregard for Airlite's rights, and the attempts by at least Innori to avoid legal ramifications for its violations of Airlite intellectual property by obscuring its identity.

124.    Airlite is entitled to injunctive relief under at least 15 U.S.C. § 1116 and an award of its reasonable costs and attorney's fees under 15 U.S.C. § 1117.

**Count V: Common Law Trademark Infringement By Innori**

125.    Airlite realleges and incorporates the allegations set forth in paragraphs 1 through 124 as though fully set forth herein.

126.    Airlite's Trademarks are valid and are entitled to protection under federal law. Airlite's Trademarks are inherently distinctive. Airlite and its predecessors have extensively and continuously promoted and used Airlite's Trademarks for years in the United States. Through that extensive and continuous use, Airlite's Trademarks have become a well-known indicator of the origin and quality of Airlite's products. Airlite's Trademarks have also acquired secondary meaning in the marketplace. Moreover, Airlite's Trademarks acquired this secondary meaning before Innori commenced its unlawful use of Airlite's Trademarks in connection with the Infringing Products.

127.    Based on the activities described above, including, for example, Innori's use of Airlite's Trademarks and/or colorable imitations thereof in direct competition with Airlite, Innori's actions constitute common law trademark infringement, at least because Innori's use of Airlite's Trademarks and/or colorable imitations thereof in the United States, including the state of California, is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Innori with Airlite and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression

COMPLAINT

that the Infringing Products are manufactured by, authorized by, or otherwise associated with Airlite.

128.     Innori's use of Airlite's Trademarks and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Airlite for which Airlite has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Airlite's Trademarks, Airlite's products, and Airlite.

129.     On information and belief, Innori's use of Airlite's Trademarks and/or colorable imitations thereof has been intentional, willful, and malicious. Innori's bad faith is evidenced at least by the example facts described above, including Innori's unlawful use of Airlite's federally registered and common law trademarks in an effort to sell the Infringing Products (including but not limited by attempting to capture a potential buyer's initial interest), Innori's infringements of Airlite's other rights and related efforts to confuse customers, such as Innori's false claim that an installation of Airlite's patented TRUEGRID® products was made with Defendants' Infringing Products, Innori's continuing disregard for Airlite's rights, and the attempts by at least Innori to avoid legal ramifications for its violations of Airlite intellectual property by obscuring its identity.

130.     Airlite is entitled to injunctive relief and an award of its reasonable costs and attorney's fees.

### Count VI: Common Law Unfair Competition By Innori

131.     Airlite realleges and incorporates the allegations set forth in paragraphs 1 through 130 as though fully set forth herein.

132.     Airlite's Trademarks are valid and are entitled to protection under federal law. Airlite's Trademarks are inherently distinctive. Airlite and its predecessors have extensively and continuously promoted and used Airlite's Trademarks for years in the United States. Through that extensive and continuous

COMPLAINT

use, Airlite's Trademarks have become a well-known indicator of the origin and
quality of Airlite's products. Airlite's Trademarks have also acquired secondary
meaning in the marketplace. Moreover, Airlite's Trademarks acquired this
secondary meaning before Innori commenced its unlawful use of Airlite's
Trademarks in connection with the Infringing Products.

133.    Based on the activities described above, including, for example,
Innori's use of Airlite's Trademarks and/or colorable imitations thereof in direct
competition with Airlite, Innori's actions constitute common law unfair
competition, at least because Innori's use of Airlite's Trademarks and/or colorable
imitations thereof in the United States including the state of California, is likely to
cause confusion, mistake, or deception as to the affiliation, connection, and/or
association of Innori with Airlite and as to the origin, sponsorship, and/or approval
of the Infringing Products, at least by creating the false and misleading impression
that the Infringing Products are manufactured by, authorized by, or otherwise
associated with Airlite.

134.    Innori's use of Airlite's Trademarks and/or colorable imitations
thereof has caused and, unless enjoined, will continue to cause substantial and
irreparable injury to Airlite for which Airlite has no adequate remedy at law,
including at least substantial and irreparable injury to the goodwill and reputation
for quality associated with Airlite's Trademarks, Airlite's products, and Airlite.

135.    On information and belief, Innori's use of Airlite's Trademarks and/or
colorable imitations thereof has been intentional, willful, and malicious. Innori's
bad faith is evidenced at least by the example facts described above, including
Innori's unlawful use of Airlite's federally registered and common law trademarks
in an effort to sell the Infringing Products (including but not limited by attempting
to capture a potential buyer's initial interest), Innori's infringements of Airlite's
other rights and related efforts to confuse customers, such as Innori's false claims

COMPLAINT

that an installation of Airlite's patented TRUEGRID® products was made with Defendants' Infringing Products,  Innori's continuing disregard for Airlite's rights, and the attempts by at least Innori to avoid legal ramifications for its violations of Airlite intellectual property by obscuring its identity.

136.     Airlite is entitled to injunctive relief and an award of its reasonable costs and attorney's fees.

### Count VII: Unfair Competition under California State Law California Business and Professions Code § 17200 By Innori

137.     Airlite realleges and incorporates the allegations set forth in paragraphs 1 through 136 as though fully set forth herein.

138.     Based on the activities described above, including, for example, Innori's use of Airlite's Trademarks and/or colorable imitations thereof in direct competition with Airlite constitutes unfair trade practices within the meaning and in violation of the California Business and Professions Code §§ 17200, *et. seq.*

139.     Airlite's Trademarks are valid and are entitled to protection under California state law. Airlite's Trademarks are inherently distinctive. Airlite and its predecessors have extensively and continuously promoted and used Airlite's Trademark for years in the United States, including in the state of California. Through that extensive and continuous use, Airlite's Trademarks have become a well-known indicator of the origin and quality of Airlite's products. Airlite's Trademarks have also acquired secondary meaning in the marketplace. Moreover, Airlite's Trademarks acquired this secondary meaning before Innori commenced its unlawful use of Airlite's Trademarks in connection with the Infringing Products.

140.     Based on the activities described above, including, for example, Innori's use of Airlite's Trademark sand/or colorable imitations thereof, Innori

COMPLAINT

violates California Business and Professions Code §§ 17200, *et. seq.* Innori's use of Airlite's Trademarks and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Innori with Airlite and as to the origin, sponsorship, and/or approval of the Infringing Products, at least by unfairly and unlawfully creating the false, deceptive, untrue, and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Airlite.

141.    Innori's use of Airlite's Trademarks and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Airlite for which Airlite has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Airlite's Trademarks, Airlite's products, and Airlite.

142.    On information and belief, Innori's use of Airlite's Trademarks and/or colorable imitations thereof has been intentional, willful, and malicious. Innori's bad faith is evidenced at least by the example facts described above, including Innori's unlawful use of Airlite's federally registered and common law trademarks in an effort to sell the Infringing Products (including but not limited by attempting to capture a potential buyer's initial interest), Innori's infringements of Airlite's other rights and related efforts to confuse customers, such as Innori's false claims that an installation of Airlite's patented TRUEGRID® products was made with Defendants' Infringing Products, Innori's continuing disregard for Airlite's rights, and the attempts by at least Innori to avoid legal ramifications for its violations of Airlite intellectual property by obscuring its identity.

143.    Airlite is entitled to injunctive relief pursuant to at least California Business and Professions Code § 17203 and an award of its reasonable costs and attorney's fees.

COMPLAINT

## Relief Sought

WHEREFORE, Plaintiff Airlite respectfully prays for:

1.     Judgment that Defendants have infringed the '049 Patent and that such infringement was willful;

2.     A permanent injunction against any further infringement of the '049 Patent by Defendants, and each of their agents, employees, servants, attorneys, successors and assigns, and all others in privity or active concert with any of them;

3.     An order authorizing and/or directing the U.S. Marshals Service, the U.S. Customs and Border Patrol, and/or another appropriate agency, to seize all infringing products imported into the United States and/or in Defendants' possession, custody, or control.

4.     An award of damages adequate to compensate Airlite for the patent infringement that has occurred, including lost profits suffered by Airlite as a result of Defendants' infringements and in an amount not less than a reasonable royalty, together with prejudgment interest and costs and reasonable attorney fees, pursuant to at least 35 U.S.C. §§ 284 and 285;

5.     That Airlite be awarded enhanced damages pursuant to 35 U.S.C. § 284 at least because of Defendants' intentional, willful, and malicious patent infringement;

6.     Judgment that Innori has: (i) infringed Airlite's '252 Registration and '002 Registration in violation of § 1114 of Title 15 in the United States Code; (ii) infringed Airlite's Trademarks in violation of § 1125(a) of Title 15 in the United States Code; (iii) engaged in unfair competition and false designation of origin and false advertising in violation of § 1125(a) of Title 15 in the United States Code; (iv) violated Airlite's common law rights in Airlite's Trademarks; (v) engaged in common law unfair competition; (vi) engaged in unfair competition in violation of

COMPLAINT

§§ 17200, et. seq. of the California Business and Professions Code; and (vii) that all of these wrongful activities by Innori were willful;

7.     A permanent injunction against any further trademark infringement of Airlite's Trademarks, false designation of origin, and unfair competition by Innori, and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or active concert with any of them;

8.     An award of Airlite's reasonable costs and attorney's fees; and

9.     Such other and further relief as this Court deems just and proper.


Dated: February 7, 2023                         Respectfully submitted,


By: _____
SNELL & WILMER
Patrick W. Kelly
California Bar No. 274588
350 South Grand Ave., Suite 3100
Los Angeles, CA 90071
Telephone: (213) 929-2500
Facsimile: (213) 929-2525

BANNER & WITCOFF, LTD.
Louis DiSanto (*pro hac vice* forthcoming)
Illinois Bar No. 6286044
ldisanto@bannerwitcoff.com
Banner & Witcoff, Ltd.
71 South Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

J. Pieter van Es
California Bar No. 250524
pvanes@bannerwitcoff.com

40

COMPLAINT

Eric Hamp (*pro hac vice* forthcoming)
Illinois Bar No. 6306101
ehamp@bannerwitcoff.com
Alexander Bruening (*pro hac vice* forthcoming)
Illinois Bar. No. 6335629
abruening@bannerwitcoff.com
Banner & Witcoff, Ltd.
71 South Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

**ATTORNEYS FOR PLAINTIFF AIRLITE**

41

COMPLAINT

## **Demand for Jury Trial**

Airlite hereby demands a jury trial on all issues so triable.

Dated: February 7, 2023                              Respectfully submitted,


By: _____
SNELL & WILMER
Patrick W. Kelly
California Bar No. 274588
350 South Grand Ave., Suite 3100
Los Angeles, CA 90071
Telephone: (213) 929-2500
Facsimile: (213) 929-2525

BANNER & WITCOFF, LTD.
Louis DiSanto (*pro hac vice* forthcoming)
Illinois Bar No. 6286044
ldisanto@bannerwitcoff.com
Banner & Witcoff, Ltd.
71 South Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

J. Pieter van Es
California Bar No. 250524
pvanes@bannerwitcoff.com
Eric Hamp (*pro hac vice* forthcoming)
Illinois Bar No. 6306101
ehamp@bannerwitcoff.com
Alexander Bruening (*pro hac vice* forthcoming)
Illinois Bar. No. 6335629
abruening@bannerwitcoff.com
Banner & Witcoff, Ltd.
71 South Wacker Drive, Suite 3600
Chicago, IL 60606

42

COMPLAINT

Telephone: (312) 463-5000
Facsimile: (312) 463-5001

**ATTORNEYS FOR PLAINTIFF**

**AIRLITE**

COMPLAINT